Ann McLAUGHLIN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Joseph BIASUCCI and Paul Mancuso, Defendants.

No. 87 Civ. 5549 (RWS).

United States District Court, S.D. New York.

June 30, 1988.

U.S. Dept. of Labor Office of the Sol., Plan Benefit Sec. Div., Washington, D.C., for plaintiff; Linda N. Winter, of counsel.

Goldstein, Zucker & Flynn, New York City, for defendant Paul Mancuso; David B. Bowman, of counsel.

1. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ann McLaughlin, whose appointment as Secretary of Labor has been con-

## OPINION

SWEET, District Judge.

Defendant Paul Mancuso ("Mancuso") has moved pursuant to Fed.R.Civ.P. 14 and 15 for an order granting him permission to amend his answer to assert a cross-claim against his codefendant, Joseph Biasucci, for contribution and to file a third party complaint impleading Sanford Pollack and the law firm of Milman, Manes & Pollack (collectively, "Pollack"). Plaintiff Secretary of Labor (the "Secretary")[1] does not oppose the motion to file a cross-claim for contribution but does oppose the motion to file the proposed third-party complaint. Upon the findings and conclusions set forth below, the motion to file the proposed third-party complaint is granted.

*Background*

The Secretary's complaint charges Mancuso with violating his fiduciary duties under sections 404(a)(1)(A) and (B) of the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1104(a)(1)(A), (B). The complaint alleges that Mancuso is liable for losses sustained by the Local 531 International Brotherhood of Teamsters, Private Ambulance Drivers Helpers Pension Fund (the "Plan") as a result of Mancuso's failure adequately to investigate Penvest, Inc. ("Penvest"), an investment manager of institutional funds, prior to investing Plan assets with Penvest and, thereafter, to monitor the performance of Penvest. The complaint alleges that the Plan lost more than $150,000 on its investments with Penvest.

Mancuso now seeks to serve a third-party complaint against the attorney and law firm who advised him in his capacity as a trustee of the Plan concerning the investment with Penvest. Mancuso alleges that Pollack, as attorney for the Plan, undertook an investigation to determine whether Penvest had accurately represented to the Plan trustees its ability to invest Plan funds safely and prudently. Mancuso as-

firmed, is hereby substituted as proper party plaintiff.

serts that any losses to the Plan resulting from the investment with Penvest were caused in whole or in part by Pollack's failure to conduct his investigation with appropriate professional care.

*The Motion to File a Third–Party Complaint*

Fed.R.Civ.P. 14(a) provides that a defending party may implead a third party "who is or may be liable to him for all or part of the plaintiff's claim against him." The purpose of this rule is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1442 at 202–03 (1971). If, as here, the third-party complaint is not filed within ten days after the defendant's original answer is served, the defendant must ask the court for leave to implead. The decision whether to implead a third-party defendant is addressed to the sound discretion of the trial court. *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,* 605 F.2d 1228, 1247 (2d Cir.1979).

Rule 14 does not create a right of action; it simply provides the procedural mechanism for the assertion of a claim for contribution or indemnity recognized under substantive law. *McLendon v. Continental Group, Inc.,* 7 Emp.Ben.Cases (BNA) 2403, 2405–06 (D.N.J.1986) [available on WEST-LAW, 1986 WL 11789]. There are two possible substantive bases for Mancuso's third-party claim against Pollack: (1) a claim for contribution under ERISA and (2) a state law claim for malpractice and negligence.

Mancuso does not allege that Pollack is a fiduciary as that term is defined in ERISA, 29 U.S.C. § 1002(21)(A). Thus, his motion raises the issue whether a fiduciary charged with breach of his fiduciary duty may assert an implied right of action for contribution under ERISA against a non-fiduciary. ERISA does not expressly provide for claims against non-fiduciaries based on their involvement in a breach by a

fiduciary of his fiduciary duties. However, courts have held that plan beneficiaries and the Secretary may bring a claim against a non-fiduciary who knowingly participates in a fiduciary's breach of duty. *See, e.g., Brock v. Gerace,* 635 F.Supp. 563 (D.N.J. 1986); *Donovan v. Daugherty,* 550 F.Supp. 390 (S.D.Ala.1982); *McDougall v. Donovan,* 539 F.Supp. 596 (N.D.Ill.1982); *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629 (W.D.Wis.1979). These courts have cited the expressed congressional intent in enacting ERISA to "make applicable the law of trusts" as a basis for awarding "the relief available in traditional trust law against non-fiduciaries who knowingly participate, either directly or through an agent, in a breach of trust." *Freund v. Marshall & Ilsley,* 485 F.Supp. at 641–42.

However, other courts have declined to recognize an implied claim under ERISA by fiduciaries for contribution from non-fiduciaries. Thus, in *McLendon v. Continental Group, Inc.,* 7 Emp.Ben.Cases (BNA) 2403 (D.N.J.1986), the Honorable H. Lee Sarokin held that ERISA did not provide a claim for contribution by an employer against a union that allegedly had knowingly participated in the employer's breach of trust. *McLendon,* 7 Emp.Ben.Cases at 2406–07. Judge Sarokin analyzed the factors set forth in *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 90–91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981), to be considered in evaluating whether such an implied right to contribution exists under ERISA and concluded that ERISA was not enacted for the special benefit of employers/fiduciaries and could find no indication in the statute's legislative history or underlying purpose and structure that revealed an intent to permit actions for contribution by a fiduciary against a non-fiduciary. *McLendon,* 7 Emp.Ben.Cases at 2406–07; *see also Massachusetts Laborers' Health and Welfare Fund v. Varrasso,* 111 F.R.D. 62 (D.Mass.1986) (magistrate's opinion summarily stating that third-party action would be contrary to the congressional intent behind ERISA); *Collini v. Wean United, Inc.,* 101 F.R.D. 408 (W.D. Pa.1983) (denying permission to implead

union based on third-party claim arising under National Labor Relations Act).

In *McLendon,* Judge Sarokin declined to follow *Schaffler v. McDowell Nat'l Bank,* 6 Emp.Ben.Cases (BNA) 2485 (W.D.Pa. 1985) [available on WESTLAW, 1985 WL 17715], in which the court held that such non-fiduciaries as attorneys and an accountant could be held liable for knowing participation in the fiduciary's breach of trust and, therefore, found that the defendant trustee had stated a valid third-party claim for contribution under Rule 14(a) against the attorneys and accountant. Judge Sarokin observed that the court in *Schaffler* had not followed the inquiry required by the Supreme Court in *Northwest Airlines* and, therefore, had "erred in leaping from a beneficiary's right to sue to a fiduciary's right to contribution." *McLendon,* 7 Emp.Ben.Cases at 2408.

The analysis in *McLendon* will be followed here. Joint liability under ERISA can be predicated only upon liability as a co-fiduciary or liability directly to plan beneficiaries. Mancuso has asserted neither as a basis for impleading Pollack. However, even if the Secretary or plan beneficiaries could assert a claim against Pollack as a knowing participant, that fact alone would not be sufficient to support Mancuso's claim for contribution. As the Supreme Court has stated:

> Nor does the judicial determination that defendants should be jointly and severally liable suggest that courts may order contribution, since joint and several liability simply ensures that the plaintiffs will be able to recover the full amount of damages from some, if not all participants.

*Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 646, 101 S.Ct. 2061, 2069, 68 L.Ed.2d 500 (1981).

▪ Mancuso's complaint does, however, assert a state law claim against Pollack for malpractice and negligence. Although the general rule is that an attorney owes no duty to third parties for acts committed in the good faith performance of his obligations to his clients, *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1080 (2d Cir. 1977), "[e]ven in the absence of an express attorney-client relationship ... a lawyer may owe a fiduciary obligation to persons with whom he deals." *Croce v. Kurnit,* 565 F.Supp. 884, 890 (S.D.N.Y.1982), *aff'd,* 737 F.2d 229 (2d Cir.1984). "In particular, a fiduciary duty arises when a lawyer deals with persons who, although not strictly his clients, he has or should have reason to believe rely on him." *Id.* As the court stated in *Penato v. George,* 52 A.D.2d 939, 383 N.Y.S.2d 900, 904–05 (2d Dep't 1976):

> a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another. (citations omitted).

Here, Mancuso asserts that Pollack was present at the initial meeting between the Plan's trustees and representatives of Penvest. Mancuso alleges that at that meeting Penvest representatives made certain statements concerning Penvest's credentials and ability to manage Plan assets. After the meeting, Mancuso asserts, Pollack was assigned the task of investigating the truthfulness of those representations and reporting to the Plan's trustees. Therefore, construing the proposed third-party complaint in the light most favorable to Mancuso, it is not possible to conclude that Mancuso will not be able to prove a set of facts that establish Pollack's liability on the malpractice claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

▪ The only remaining issue is whether to accept Mancuso's state law claim against Pollack as to whom diversity jurisdiction does not appear to exist. Rule 14(a) does not require the acceptance of the third-party complaint since Mancuso's claim is legally independent of the Secretary's claim and could be asserted regardless of the Secretary's success or failure on the original complaint. However, third-party claims,

such as Mancuso's, that arise out of the same nucleus of operative facts as the original claim fall within a court's ancillary jurisdiction. *Federman v. Empire Fire and Marine Ins. Co.,* 597 F.2d 798, 810 (2d Cir.1979). Mancuso's claim against Pollack arises out of events relating to the trustees' investigation of Penvest and, therefore, not only shares common facts with but is logically related to the Secretary's claim. *See Morse/Diesel, Inc. v. Trinity Indus., Inc.,* 655 F.Supp. 346, 352 (S.D.N.Y. 1987). Therefore, exercising the discretion granted under Rule 14(a) and the court's ancillary jurisdiction, leave will be granted to file the proposed third-party complaint.

Upon the findings and conclusions set forth above, the motion to amend the complaint and for leave to file the proposed third-party complaint is granted.

IT IS SO ORDERED.